No. 41,296

Paul Atkinson and Jean Atkinson, His Wife; City Oil and Gas Company, Inc., Corporation; and Roger A. Martin, *Appellees*, v. The State Highway Commission of the State of Kansas, *Appellant*.

(339 P. 2d 334)

Opinion filed May 16, 1959.

*Stanley Taylor*, of El Dorado, and *Jerry Ann Foster*, of Topeka, argued the cause, and *W. B. Kirkpatrick*, assistant attorney general, was with them on the briefs for the appellant.

*Philip E. Buzick*, of Topeka, and *Robert P. Anderson*, of Overland Park, argued the cause, and *Robert L. Webb*, *Ralph W. Oman*, *Robert A. McClure*, and *James D. Waugh*, all of Topeka, and *Lyndus A. Henry*, of Overland Park, were with them on the briefs for the appellees.

The opinion of the court was delivered by

Robb, J.: This is an action for injunctive relief. The appeal is by the state highway commission, defendant below, from an order made by the trial court permanently enjoining contemplated improvements by the commission on its previously condemned right of way adjacent to plaintiffs' land for the reason that plaintiffs' right of access was thereby limited without just compensation.

The petition in pertinent part alleged that plaintiffs' property consists of a filling station, gasoline pump islands, and driveways or parking areas around the station and is located upon the southwest corner of the intersection of Seventy-fifth Street and U. S.

Highway 69 in Johnson county. The street runs east and west and the highway north and south. The property has been used for filling station purposes for over six years. The station building is located along the west side of the property facing Highway 69. One gasoline pump island is parallel to and fifteen feet south of the southern right of way line of Seventy-fifth Street and the two remaining gasoline pump islands are parallel to each other and to Highway 69 and are located between the highway and the station building, the easternmost island being ten feet west of the western right of way line of Highway 69. At all times plaintiffs have had full and unrestricted access to and from the traveled portions of Seventy-fifth Street and Highway 69 and along the north and east boundaries of their property including the northeast corner thereof. Such free and unrestricted access has been possessed, used and enjoyed by plaintiffs with the commission's knowledge and acquiescence. Plaintiffs can use all of their facilities in serving customers with present free and unlimited ingress and egress from all directions. Such free and unrestricted access is necessary and essential to the full use and enjoyment of the property and the use and purpose to which it has been devoted. Plaintiffs cannot relocate the building or islands because of other businesses and buildings. The commission, unless enjoined, will construct raised concrete curbing from the corner twenty feet to the west along the south edge of Seventy-fifth Street and a combination raised and rolled back concrete curbing from the corner to the south along the west line of Highway 69 and the entire east line of plaintiffs' property. This construction will deprive plaintiffs of free and unlimited access and they will be unable to utilize their property fully as has heretofore been done. The two north gasoline pumps will be wholly useless and the two easternmost pumps will have to be removed or automobiles of customers being serviced there will block ingress and egress of other customers and will limit use of the two pumps in the westernmost island, all of which will greatly depreciate, if not wholly destroy, plaintiffs' volume of business and profits. The commission, if not enjoined, will so proceed without compensation to plaintiffs for the taking of the full and unrestricted right of access heretofore owned, enjoyed and utilized by plaintiffs which right is necessary and essential to the full utilization and enjoyment of the property. This constitutes a taking of plaintiffs' property and rights without due process of law. Plaintiffs

will suffer special and peculiar damages uncommon to the general public for which there is no adequate remedy at law and they are entitled to the equitable relief of injunction until such time as such property and rights of plaintiffs are acquired by the commission in accordance with law. The petition also alleged that the commission was proceeding with the above activities and should be temporarily restrained pending hearing on the injunction or irreparable damage would result to plaintiffs.

On July 30, 1957, the trial court temporarily restrained the commission from proceeding further until a hearing in regard to the granting of a temporary injunction could be held. On August 16, 1957, a temporary injunction was ordered by the trial court and plaintiffs posted a $1,000 bond under G. S. 1949, 60-1110.

The commission filed its answer making certain admissions not necessary to reiterate here and further stated:

The curbing and entrances adjacent to plaintiffs' land were originally designed under a plan held open for and subject to alteration and adjustment. Plaintiffs had not made any attempt to get the commission to change the design of the curbing and entrances to their property. Adjacent to the southeast corner of plaintiffs' property, proceeding north, the commission proposed to curb for a distance of two feet, provide an entrance of thirty feet, curb another twenty-two feet, provide another entrance of thirty feet to approximately four feet south of the north line of plaintiffs' property curbing around the northeast corner thereof from south to west on a fifteen foot radius all in the public right of way. U. S. Highway 69 is an urban type roadway in this area with many homes, business properties and shopping centers adjacent thereto. The project was 2.851 miles long and consisted of widening the highway from two lanes to four lanes with curbs and entrances. At the particular intersection involved the annual average twenty-four hour traffic count in 1956 was 17,620 vehicles. Because of the great volume of traffic and in the interest of public safety and convenience, the curbing and entrances were necessary and plaintiffs would not be denied ingress and egress. The commission possessed legislative authority and discretion to regulate ingress and egress. Plaintiffs were not entitled to maintain this action to prevent the accomplishment of measures designed for the safety and benefit of the public. Plaintiffs had an adequate remedy at law by an action in implied contract.

Plaintiffs filed a reply in the form of a general denial of new matter alleged in the answer and restated many of the allegations of the petition whereby the issues were made up.

In view of later discussion herein, it is unnecessary to consider fully the evidence and testimony of the parties except to say generally that they substantially support the allegations of the pleadings.

At the close of the introduction of evidence the trial court permanently enjoined the commission from building, constructing or maintaining any curb, or any other public improvement, along or adjacent to the north or east boundaries of plaintiffs' property and from doing any other act permanently limiting, lessening or interfering with the free, unlimited and direct access of plaintiffs and their customers to and from the station to and from Seventy-fifth Street and Highway 69, unless and until the affected property rights of the plaintiffs have been acquired by the commission by purchase or by condemnation proceedings, provided that nothing in the judgment should prevent the commission from doing all acts necessary to accomplish the widening and improvement of the surface of Highway 69 on the commission's presently owned right of way, or from temporarily obstructing and interfering with right of access of plaintiffs or their customers necessary for the accomplishment of such widening and surfacing. Plaintiffs were required to file a $1,000 bond in accordance with G. S. 1949, 60-1110.

The commission appealed from the judgment specifying as error that the trial court erred in denying that plaintiffs have a clear and adequate remedy at law; in granting judgment against the commission's exercise of its regulatory power in making necessary and urgent public improvements; in permitting plaintiffs to claim compensation for *any* loss resulting from *any* limitation of access as the basis for the injunction; in rendering judgment contrary to the evidence and the law and in permanently enjoining the commission from constructing any curb or other public improvement along plaintiffs' property which would permanently limit, lessen, or interfere with the free, unlimited and direct access of plaintiffs and their customers. Further errors urged were that the trial court erroneously granted a permanent injunction against the commission unless and until plaintiffs' affected property was purchased or condemned; that the injunction was granted where no property or

property rights were taken and was in error because it related to the exercise of police power by the commission.

There is no question but that the commission's planned improvement requires the curbing in conjunction with the electrically-controlled red, yellow, and green traffic signal and thus we do not have an enjoining of the mere installation of such signal.

No motion for new trial was filed or presented to the trial court and in such circumstance we will turn to, and reaffirm, certain well-established rules which obviously answer most of the commission's contentions in that regard:

"In the absence of a motion for a new trial, trial errors are not open to appellate review." (*Andrews v. Hein,* 183 Kan. 751, 332 P. 2d 278.)

"Where an appeal is from an adverse judgment and an order overruling a motion for a new trial, and such order is not specified as error in compliance with Rule No. 5 of this court, appellate review is limited to the question whether the judgment is supported by the pleadings and findings of fact, and inquiry will not be made of specifications pertaining only to alleged trial errors. (*Shelton v. Simpson,* 184 Kan. 270, 336 P. 2d 159.)

"A general finding made by a trial court determines every controverted fact in support of which evidence was introduced, and a general finding raises a presumption that the trial court found all facts necessary to sustain and support the judgment." (*In re Estate of Julian,* 184 Kan. 94, 334 P. 2d 432.)

Did the commission take some property or property rights of plaintiffs for which it must pay compensation by admitted limitation of access between their property and the public thoroughfare involved herein?

By the authority given it under G. S. 1949, 68-413 the commission may, by the exercise of the right of eminent domain, "acquire title . . . to any lands or interest or rights therein" necessary for the construction, improvement, reconstruction, maintenance, or drainage of the state highway system, defendant herein. Under this statute the intention of the legislature in regard to what the commission could condemn and take by the exercise of its right of eminent domain was fully determined by the opinion of this court in *State, ex rel., v. State Highway Comm.,* 163 Kan. 187, 182 P. 2d 127, where it was held that the commission acquired a fee title to all land condemned as necessary for the purposes specified in the statute. In the body of the opinion a statement was made to the effect that notwithstanding the far-reaching consequences, it is solely a legislative prerogative to determine the wisdom of legislation touching the public interest and it is the duty of the courts to ascertain and make effective the legislative will. (p. 200.)

In the above case the commission was allowed to sell remnants of lots, previously condemned, which by subsequent determination were not needed.

The 1951 legislature amended the above-quoted portion of G. S. 1949, 68-413 (now appearing as G. S. 1957 Supp. 68-413) by inserting the words "or an easement" immediately following the word "title" and further providing:

"That in all cases where condemnation proceedings are instituted to acquire right of way for state highway purposes . . . *the state highway commission shall not acquire any right or interest in land other than an easement. . . .*" (Our emphasis.)

The legislature apparently exercised its prerogative to determine the wisdom of legislation touching the public interest, as heretofore stated in *State, ex rel., v. State Highway Comm.,* supra, and by plain, clear, concise, and unambiguous language it made known its intention that all the commission could condemn under its power of eminent domain was an easement.

In 1953 the legislature enacted Article 19, Chapter 68, relating to controlled access facilities, pertinent provisions of which include:

"68-1901. When used in this act: (*a*) 'A controlled access facility' means a highway, road or street especially designed to expedite and control through and local traffic, and over, from or to which highway . . . owners . . . of abutting property shall have only a controlled right or easement of *access, light, air or view.* . . . (*b*) 'Highway authorities' means the state highway commission. . . ."

"68-1902. The highway authorities may so regulate, restrict or prohibit access to a controlled access facility so as to best serve the traffic for which such facility is intended."

"68-1903. The highway authorities . . . may acquire the desired private or public property, *including rights of access, light, air or view* for controlled access facilities, *by* gift, devise, purchase or *condemnation,* in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with highways. . . ." (Our emphasis.)

The commission argues there must be an unreasonable, arbitrary, complete or some other equivalent acquisition of the rights of access, but the legislature, in its wisdom, did not see fit to put any limit on the amount of access required to be taken before the commission must resort to condemnation if it were not acquired by gift, devise or purchase. We think the statute means just what it says.

The first case decided by this court involving the new controlled access statutes, now G. S. 1957 Supp. 68-1901, *et seq.,* was *Simmons*

*v. State Highway Commission,* 178 Kan. 26, 283 P. 2d 392. The commission there sought to widen and improve a two lane highway by making it four lanes wide with controlled access. The land in question was divided into two tracts, consisting of a north and south tract, which had been used as farm land but had other potential uses at the time. A railroad right of way easement had divided the two tracts so there was a front, or west, portion of each tract abutting the highway and a back, or east, portion separated therefrom by the railroad tracks. We approved an instruction of the trial court therein which involved the taking by the commission of the owner's right of access. (p. 30.) The court further stated that in addition to some land taken, the action resulted in the landowner losing the right to use approximately 3780 feet of access she had theretofore possessed along the highway. (p. 28.) It was held that the frontage land taken with access rights was worth more per acre than the remaining adjacent land without those rights because of the railroad tracks.

The Simmons case settled the question that rights of access are a property right and the statute (G. S. 1957 Supp. 68-1903) empowers the commission to take such rights of access by condemnation, as was clearly stated therein, but that power still does not allow the commission to take private property for public use without just compensation. (U. S. Constitution, Amend. 14; Kansas Constitution, Art. 12, § 4.) The legislature manifested its intention to provide that the taking of rights of access by the commission are to be compensated for or there would be no meaning whatever to that part of 68-1903 reading:

". . . in the same manner as now or hereafter authorized by law for acquiring property or property rights in connection with highways. . . ."

To hold that the above section does not require the commission to compensate a landowner for the taking of his rights of access would be neither an ordinary nor a judicial interpretation of the statute.

In *Franks v. State Highway Commisison,* 182 Kan. 131, 319 P. 2d 535, only the petition was involved because of a demurrer testing its sufficiency. Allegations thereof showed that the commission, under G. S. 1957 Supp., 68-1904, had commenced an eminent domain proceeding to condemn a small amount of plaintiffs' land together with their right of access for the construction of a frontage road. The right of way for the new and relocated Highway 24 had

previously been condemned. Plaintiffs sought to enjoin the construction of the highway, the frontage road and the resulting controlled access. From the filing of the petition to the time it was presented to this court, the construction was substantially completed and the question arose as to whether the relief sought had become moot. In these particulars that case is distinguishable from ours, but we did there say that injunction is an equitable remedy and a preventive measure to maintain the *status quo* or to operate *in futuro*. (p. 136.) In the Franks case we further stated:

"Plaintiffs' complaint is not that the commission did not, and does not, have power through eminent domain to condemn and to acquire rights of access. They complain their right of access was limited and controlled by the commission without proper exercise of the power granted to it under G. S. 1955 Supp. 68-1903. . . ." (pp. 134-135.)

The same thing is true in our present case and we cannot now say, in view of our previous discussion in regard to the effect of the commission's failure to file a motion for new trial, that these plaintiffs are in any worse position on their petition than the Franks were on theirs. The commission contends in support of the proposition that plaintiff had an adequate remedy at law, that in the Franks case we said,

"Such exigencies may later compel the trial court to deny the injunction because it would inflict great injury upon the commission and its power of eminent domain and would adversely affect the public interest. In lieu of a decree to enjoin, the court could award damages to plaintiffs as compensation [citation] by reason of the controlled access facility and its effect on plaintiffs' right of access to and from their property." (p. 137.)

Here we are confronted with the proposition that the trial court made a general finding in favor of the judgment for plaintiffs inherent in which, by reason of its order permanently enjoining the commission, was a finding that the taking was unreasonable and that plaintiffs did not have an adequate remedy at law. This finding is binding on the commission and this court. By reason of its injunction order, the trial court merely maintained the *status quo* until such time as the commission, by and through its power of eminent domain, properly proceeds to condemn the rights of access so vital to the property and the business conducted thereon.

We have examined all of the commission's contentions, arguments and supporting authorities but do not deem it necessary to discuss them because that would only extend the opinion further than is necessary for the determination of the vital questions involved in this appeal.

By reason of what has been herein said, we are compelled to hold that the trial court did not err in granting the permanent injunction in the manner it did and the judgment should be affirmed. It is so ordered.

PRICE, J., concurs in the result.

WERTZ, J., dissents.

FATZER, J., dissenting: In my opinion the pleadings and findings of the trial court do not support the judgment permanently enjoining the commission from proceeding with a vital highway improvement under the police power of the state pursuant to G. S. 1949, 68-404, 68-406 and 68-407, and the proposed restriction of plaintiffs' right of access to and from the traveled portions of 75th street and U. S. Highway 69 is not unreasonable under all the circumstances. Of the 83.5 feet of plaintiffs' east boundary abutting U. S. Highway 69, 60 feet is made available for ingress and egress to and from the street and highway by two entrances, and the corner curbing is reasonably necessary to make a proper place for and to guard the traffic signal at this dangerous intersection. Except for the curbing around the corner, plaintiffs' northern boundary abutting 75th street is unaffected.

As stated by Mr. Justice Holmes in *Penna. Coal Co. v. Mahon,* 260 U. S. 393, 67 L. Ed. 322, 43 S. Ct. 158:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized, some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the diminution. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act. So the question depends upon the particular facts. The greatest weight is given to the judgment of the legislature, but it always is open to interested parties to contend that the legislature has gone beyond its constitutional power. . . .

". . . As we already have said, this is a question of degree—and therefore cannot be disposed of by general propositions. . . ." (pp. 413, 416.)

See, also, *Creasy v. Stevens,* 160 F. Supp., 404, 410.

Furthermore, courts may not substitute their judicial judgment for the judgment of the commission exercised under valid legisla-

tive acts, rather courts are obliged to find facts which demonstrate that the commission's conduct departs from the realm of the reasonable and passes over into the realm of the arbitrary and capricious (*Spurgeon v. Board of Commissioners*, 181 Kan. 1008, 1014, 317 P. 2d 798, and cases cited therein).

The right of access does not extend to all points of the boundary between plaintiffs' property and the street and highway. The extent of that right is the real question here presented. Its measure, I think, is simply reasonable ingress and egress to and from the street and highway under all the circumstances. The extent of the right of access may be said to be that which is reasonably required, giving consideration to the purpose to which the property is adapted (64 C. J. S., Municipal Corporations, § 1703, p. 99).

I would reverse the judgment of the trial court and enter judgment for the defendant.